GOLDMAN SERVICES MECHANICAL
CONTRACTING, INC., Plaintiff,

v.

CITIZENS BANK & TRUST COMPANY
OF PADUCAH, a Kentucky
corporation, Defendant.

A & S BUILDING SYSTEMS,
INC., Plaintiff,

v.

CITIZENS BANK & TRUST COMPANY
OF PADUCAH, a Kentucky
corporation, Defendant.

POWER & TELEPHONE SUPPLY
COMPANY, a Tennessee
corporation, Plaintiff,

v.

CITIZENS BANK & TRUST COMPANY
OF PADUCAH, a Kentucky
corporation, Defendant.

Civ. A. Nos. 90–0055 P(J), 90–0209
P(J) and 90–0239 P(J).

United States District Court,
W.D. Kentucky.
Paducah Division.

April 9, 1992.

W. Pelham McMurry and G. Kent Price, McMurry & Livingston, Paducah, KY, for defendant Citizens Bank & Trust Co. of Paducah.

Joseph S. Freeland, Tod D. Megibow, Freeland & Megibow, Paducah, KY, for plaintiff Goldman Services Mechanical Contracting, Inc.

James B. Brien, Jr., Neely & Brien, Mayfield, KY, for plaintiff A & S Bldg. Systems, Inc.

Mark P. Bryant, Jones, Bradley, Bryant & Kautz, Paducah, KY, Stephen P. Hale, Memphis, TN, for plaintiff Power & Telephone Supply Co.

## MEMORANDUM OPINION

JOHNSTONE, District Judge.

These consolidated diversity cases assert common law tort claims against the defendant, Citizens Bank & Trust Company of Paducah, Inc. ("Citizens"). The plaintiffs claim that an employee of Citizens negligently signed a certificate of sufficiency, allowing Purdy Sisson (a non-party to this action) to qualify as surety on Miller Act payment bonds for federal contracts. Before the court are cross-motions for summary judgment. For the reasons stated below, summary judgment will be granted for the defendant.

The plaintiffs are subcontractors who furnished labor and materials on federal construction projects. Because their claims are identical, they will be collectively referred to as "Goldman". In each case, the prime contractor executed a performance bond and a payment bond guaranteeing payment to all those supplying labor and materials for the completion of contract projects. These bonds were executed as required by the Miller Act, Title 40 U.S.C. § 270a et seq.[1] In each case, an individual named Purdy Sisson became

---

1. Section 1 of the Act requires that before any contract in excess of $25,000.00 may be awarded to a contractor for public work, the contractor must furnish two bonds:

(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate for the protection of the United States.

(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. 40 U.S.C. § 270a(a).

surety on the bonds. Various prime contractors defaulted on their obligations and Sisson's assets were insufficient to cover the default.[2]

The Federal Acquisition Regulations found at 48 C.F.R. 28.200, *et seq.* govern the procedures for use of Miller Act sureties. Under these regulations, Sisson was required to execute an Affidavit of Individual Surety (SF–28) to aid the contracting officer in determining his acceptability as surety. 48 C.F.R. 28.202–2. The SF–28 includes a listing of the individual surety's assets, liabilities and net worth.

On the back of the SF–28 is a form certificate of sufficiency which must be signed by "an officer of a bank or trust company, a judge or a clerk of a court of record, a United States attorney or commissioner, a postmaster, a collector or deputy collector of Internal Revenue, or any other officer of the United States acceptable to the department or establishment concerned." 48 C.F.R. 53.301–28 (1987). The Certificate of Sufficiency reads:

> I hereby certify that the surety named herein is personally known to me; that, in my judgment, said surety is responsible, and qualified to act as such; and that, to the best of my knowledge, the facts stated by said surety in the foregoing affidavit are true.

The certificate provides no specific instructions directed to the certifying individual regarding the method or extent to which the information on the surety's affidavit must be verified.[3]

On March 11, 1987, Sisson informed Janis Morris, a branch manager and assistant vice-president for Citizens, that he was attempting to qualify as surety on contracting bonds. He requested her signature on an SF–28 Certificate of Sufficiency. Morris was familiar with Sisson from limited prior dealings at the bank.[4]

In support of the information on the SF–28, Sisson presented Morris with a Certificate of Incorporation for Sisson International & Associated Refineries Corporation together with a Financial Review Report of his corporation compiled by a certified public accountant. The financial report indicated that Sisson's corporation held significant assets.[5] Morris reviewed these documents, as well as the asset statements on the SF–28. She admits that she did not fully understand them. Sisson apparently advised Morris that her signature on the certificate merely verified Sisson's identity. Under these conditions, she signed the certificate. Ultimately, she signed over twenty of them.

Sisson used the SF–28 with certificates of sufficiency signed by Morris to qualify as surety on several government contracts. As stated, ultimately it was discovered that Sisson did not have sufficient assets to meet his obligations as surety. Goldman alleges that Morris had a duty to investigate Sisson's financial status before signing the certificates. It claims that her signature on the certificates was negligent misrepresentation and that Citizens should be held liable for damages resulting from Sisson's default.

Plaintiffs argue Citizens is liable under a theory of per se negligence based upon violation of the Miller Act and under common law negligence. Before addressing

---

**2.** Sisson has instituted Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the Western District of Kentucky, Paducah Division, individually, Case No. 5–90–00504(2)(11) and for his corporation, Sisson International and Associated Refineries Corporation, Case No. 5–90–00505(2)(11).

**3.** Instruction 5 on the Certificate states: Certificates showing additional assets, or a new surety, may be required to assure protection of the Government's interest. Such certificates must be based on the personal investigation of the certifying officer at the time of the making thereof, and not upon prior certifications.

**4.** Ms. Morris had met Sisson through a long banking association with Sisson's mother. Sisson also approached Morris on February 11, 1987 to open a trust account with the bank. Morris referred Sisson to the trust department, where he entered into an Investment Agency Management Agreement with Citizens.

**5.** The Financial Review Report contains a disclaimer indicating that the review was based upon information furnished by the corporation and that the report was not performed in accordance with generally accepted auditing standards.

the legal sufficiency of the negligence claims, the court must dispose of Citizens' assertion that the Miller Act preempts all common law remedies on actions concerning payment bonds. Citizens believes that the Act provides the sole and exclusive remedy for unpaid subcontractors on federal construction projects and that plaintiffs' negligence action should be foreclosed, or limited to the framework of the federal statute. The court disagrees.

■ The purpose of the Miller Act "is to protect persons supplying materials and labor for federal projects." *United States ex rel. Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 761 (9th Cir.1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985). It was designed to provide an alternative remedy to the mechanics' liens ordinarily available on private construction projects, because a lien cannot attach to Government property. *J.W. Bateson Co. v. Board of Trustees*, 434 U.S. 586, 589, 98 S.Ct. 873, 875, 55 L.Ed.2d 50 (1978). The provisions of the Act stand as a surrogate for the remedies provided in an ordinary mechanics' lien. A mechanics' lien is not an exclusive remedy, but is separate from and independent of any in personam rights which the supplier might have. 53 Am.Jur.2d MECHANICS' LIENS 340.

■ Citizens has pointed to nothing in the Miller Act or in its legislative history to suggest that Congress intended to protect private third parties from liability for torts committed in connection with payment bonds executed pursuant to the Act. In fact, the Congressional purpose of protecting suppliers of goods and services for federal projects would be undermined if the court adopted Citizens' argument. This court is aware of at least two federal decisions specifically holding that the Miller Act does not preempt other available remedies. *See, United States ex rel. Sunworks Div. of Sun Collector Corp. v. Ins. Co. of North America*, 695 F.2d 455 (10th Cir.

1982); *K–W Industries v. National Surety Corp.*, 855 F.2d 640 (9th Cir.1988). As stated by the court in *Sunworks:* "Where neither a valid Miller Act nor mechanics' lien claim exists, other statutory or common law remedies may be available to an unpaid supplier." *Sunworks*, 695 F.2d at 458.

Citizens' reliance on *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), for a contrary result is misplaced. The applicability of the *F.D. Rich* decision to a similar preemption question was discussed in *K–W Industries, supra.* This court agrees with the analysis contained in that opinion and it need not be repeated here. Goldman asserts a cause of action based in tort and not created by the Miller Act. The suit is before this court only upon the basis of diversity jurisdiction. Accordingly, the court will review the negligence claim under the law of Kentucky. *Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ The plaintiffs claim that the Miller Act's implementing regulations create a standard of care requiring Citizens to perform an independent investigation of the proposed surety's assets before signing a certificate of sufficiency. They argue that violation of this alleged standard of care is negligence per se under the law of Kentucky.[6] There is no question that a statute or regulation can supply the standard of care for a negligence action. *See, e.g., Grayson Frat. Order of Eagles v. Claywell, Ky.*, 736 S.W.2d 328 (1987). However, Goldman has failed to convince this court that any statutory requirement was violated.

■ The literal language of the Miller Act imposes no requirements upon a signatory to a certificate of sufficiency to perform an asset investigation. The certification itself, quoted in full at p. 740, is quali-

---

**6.** A number of Kentucky decisions have recognized that violation of a statute or regulation can be negligence per se. *See: Louisville Taxicab & Transfer Co. v. Holsclaw Transfer Co., Ky.*, 344 S.W.2d 828 (1961); *Vissman v. Koby, Ky.*, 309 S.W.2d 345 (1958); *Phoenix Amusement Co. v. White*, 306 Ky. 361, 208 S.W.2d 64 (1948); *Blue Grass Restaurant Co. v. Franklin, Ky.*, 424 S.W.2d 594 (1968); *Britton v. Wooten, Ky.*, 817 S.W.2d 443 (1991).

fied "to the best of [the signatory's] knowledge". Instruction 5, which follows the certification block on SF–28, mentions a "personal investigation" only in relation to further certificates which may be required. No other language in the Act, its implementing regulations, or the certificate itself refers to an investigation by the certifier. Giving the words of the statute their plain, common and ordinary meanings, there is no requirement of investigation imposed. The court declines to supply by inference what Congress has chosen to omit.

Even if the court were inclined to infer that Congress intended to impose an investigation requirement, the statute contains no indication of the scope or extent required. Morris did perform some investigation. She reviewed the documents provided to her by Sisson. Without guidelines for the performance of an investigation, any attempt to define a statutory standard of care for the purposes of a negligence action is futile. The court finds no statutory violation in connection with Morris' execution of the certificate of sufficiency. Therefore, there is no basis for application of the negligence per se rule against Citizens.

▮ Goldman submits that the common law of negligence provides an alternate basis for liability. Kentucky case law provides very little guidance concerning claims of negligent misrepresentation. In *Ingram Industries, Inc. v. Nowicki*, 527 F.Supp. 683 (E.D.Ky.1981), the court decided that Kentucky would adopt the standards set out in RESTATEMENT (SECOND) TORTS, Section 552 (1977) concerning information negligently supplied for the guidance of others. Based upon Kentucky's general adoption of the RESTATEMENT in other tort situations, the court concurs with that conclusion.

Section 552 of the RESTATEMENT (SECOND) TORTS, Information Negligently Supplied for the Guidance of Others, states:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communication the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

The section identifies specific elements necessary for plaintiff to maintain a cause of action. Goldman fails to offer sufficient evidence that it can satisfy the requirements to defeat Citizens' motion for summary judgment.

The heart of a negligent misrepresentation claim under the RESTATEMENT is the plaintiff's justifiable reliance upon the information supplied by the defendant. Goldman presents no evidence that the information on the certificate of sufficiency was ever communicated to the subcontractors by Citizens or anyone else. Goldman apparently never saw any of the information on Sisson's SF–28 prior to the default. Goldman cannot make a credible claim of reliance on information that was never communicated to it in any way. The RESTATEMENT and its comments make clear that actual reliance on the information by the person for whom it was intended is required for liability for a negligent misrepresentation. The court is not persuaded by Goldman's argument that it relied upon the payment bond and therefore on the

surety and therefore on the information in the SF–28 and therefore on the certificate of sufficiency signed by an employee of Citizens. This concept of causation is far too attenuated to be the basis of liability.

Goldman's position is not supported by its citation to *Learjet Corp. v. Spenlinhauer*, 901 F.2d 198 (1st Cir.1990). *Learjet* found that Kansas law would allow a claim for *fraudulent* misrepresentation based upon indirect reliance. *Learjet* rejected a negligent misrepresentation claim because "[c]ourts generally restrict negligent misrepresentation claims to a narrower class of plaintiffs ..." 901 F.2d at 203. *Learjet* lends no support for Goldman's negligence claim. Likewise, *Shatterproof Glass Corp. v. James*, 466 S.W.2d 873 (Tex.Civ. App.1971), does not support Goldman's theory of indirect reliance. In *Shatterproof*, the appellant received an inaccurate audit report directly from the appellee and actually relied upon it. The report was prepared for a third party and the appellee argued lack of privity with the appellant. The court held that the traditional requirement of privity of contract was no longer required in a case of negligent misrepresentation. Goldman did not act in reliance on information supplied by Citizens. The court finds that Goldman has failed to produce evidence of the necessary reliance to maintain an action for negligent misrepresentation against Citizens.

Further, Goldman was not the intended recipient of the information on the certificate. The certificate of sufficiency is provided for the convenience of the government to aid in determining the sufficiency of a surety. 48 C.F.R. 28.202–2 (1987). Even if Goldman could offer evidence that it did rely on the certificate, it is not among the limited class for whom the information was intended, as required by subsection (2) of Section 552.

An exception provided in subsection (3) of Section 552 enlarges the protected class where there is a public duty to give the information. The subsection does not apply in this case. Citizens was not required by law to sign the certificate of sufficiency, nor was the bank required by statute to

perform any investigation. Morris was not acting as a public officer in signing the certificate. Therefore, no public duty is implicated in the transaction.

The court concludes that Goldman has failed to present sufficient evidence to support its claim for negligent misrepresentation. Goldman has failed to show that it relied upon the certification or that the certificate was intended for its benefit and guidance. In traditional negligence terms, Goldman has failed to show proximate causation or duty. Whether analyzed under the RESTATEMENT or under traditional principles, essential elements of the claim are lacking. Citizens motion for summary judgment will be granted.

■ Goldman has recently sought to amend its complaint under Rule 15, Fed. R.Civ.P. to include an allegation of fraudulent misrepresentation on the part of Citizens. The decision whether to permit amendment is committed to the discretion of the trial court. *See General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir.1990). The trial court's discretion is not total, but is "limited by Rule 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir.1987). In deciding whether to permit amendment, the trial court may consider such factors as undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.1973). Because the court has determined that the proposed amendment would be futile, the motion will be denied.

■ Goldman's claim of fraudulent misrepresentation is unsupportable on the facts. Kentucky law requires reliance upon the alleged misrepresentation. *See Wilson v. Henry, Ky.*, 340 S.W.2d 449 (1960). As discussed above, evidence of reliance is totally lacking. Goldman seeks to apply the bootstrapping approach taken in *Learjet*, supra, to establish its reliance. Even if this court were to adopt the approach taken in *Learjet*, which applies Kan-

sas law, Goldman would be required to show that it provided its services in reliance on the government contracting officer's determination of Sisson's sufficiency as surety AND that the contracting officer relied on Morris' certification in reaching an independent decision to accept Sisson as surety. There is no evidence of either. Under the standards set out in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989) the proposed amendment could not survive a motion for summary judgment. Discovery in this action is complete and there is no indication that further discovery would alter the courts conclusion. The motion to amend will be denied.

An appropriate order has been entered this 8th day of April, 1992.

### SUMMARY JUDGMENT

For the reasons set forth in the memorandum opinion this date entered,

IT IS ORDERED AND ADJUDGED:

1. Plaintiffs' motion to amend the complaint is denied.

2. Summary Judgment is granted to the defendant, Citizens Bank & Trust Company of Paducah, plaintiffs' complaint in these consolidated cases is dismissed, and the Clerk of the court is directed to strike these matters from the docket.

There is no just reason for delay, and this is a final and appealable order.