**BEALL PLUMBING & HEATING COMPANY, Plaintiff,**

v.

**FIRST NATIONAL BANK OF KEYSTONE and Billie Cherry, as agent, servant and employee of the First National Bank of Keystone, Defendants.**

Civ. A. No. 1:92–1122.

United States District Court, S.D. West Virginia, at Bluefield.

March 25, 1994.

David P. Cleek, Cleek, Pullin & Bibb, Charleston, WV, Scott A. Livingston, Bastianelli, Brown & Touhey, Washington, DC, for plaintiff.

Michael Gibson, Gibson & McFadden, Princeton, WV, Randal W. Roahrig, Randal W. Roahrig & Assocs., Princeton, WV, for defendants.

## MEMORANDUM OPINION

FABER, District Judge.

This action involves a dispute relating to the defendants' liability with regard to a certificate of sufficiency signed by defendant Billie Cherry (hereinafter "Cherry"), a Vice–President of defendant First National Bank of Keystone (hereinafter "First National"). Currently pending before the court is a motion for summary judgment filed by defendant First National on July 6, 1993. For the purpose of considering the defendant's motion for summary judgment, the relevant facts are as follows: On June 16, 1988, Innovative Military Technologies, Inc., doing business as Meridian Construction Company, Inc. (hereinafter referred to as "Meridian"), entered into two contracts with the United States Corps of Engineers to construct a child development and religious education center and an improved family housing project. Pursuant to such contracts, the United States Corps of Engineers required payment bonds pursuant to the Miller Act at 40 U.S.C. §§ 270a, *et seq.*

Serving as individual sureties for the payment bonds were Alex and Hazel McNew (hereinafter "McNews"). Pursuant to the Miller Act, the McNews were required to submit an affidavit of individual surety listing the assets with which they secured the bond. In connection with such affidavit, a certificate of sufficiency was required. The certificate of sufficiency stated "I Hereby Certify, That the surety named herein is personally known to me; that, in my judgment, such surety is responsible and qualified to act as such; and that, to the best of my knowledge, the facts stated by such surety in the foregoing affidavit are true."

Paragraph 5 of the instructions accompanying such certificate required that the certificate be signed by "an officer of a bank or trust company, a judge or clerk of a court of record, a United States district attorney or commissioner, a postmaster, a collector or deputy collector of Internal Revenue, or any other officer of the United States acceptable to the Department or establishment concerned." On June 29, 1988, Ms. Billie J. Cherry, an executive vice president for defendant First National, signed the certificate of sufficiency for the McNews. Ms. Cherry apparently reviewed a certified appraisal of the McNews' real estate along with the affidavit completed by the McNews prior to signing the certificate of sufficiency. Upon the advice of an independent bank auditor, Ms. Cherry also executed a disclaimer letter on June 29, 1988, in which she stated:

TO WHOM IT MAY CONCERN:

Please be advised that I have personally known Alex and Hazel McNew through their banking relation with our bank.

I have reviewed an appraisal by Robert Duran that shows an estimated fair market value of the McNew property in excess of $63,000,000.00, however, I cannot guarantee the accuracy.

I am signing this only because I know the McNews.

/s/ Billie J. Cherry

Executive Vice President

cc: J. Knox McConnell, President

On or about July 7, 1988, the prime contractor for the housing project subcontracted with the plaintiff to complete plumbing and heating work in the amount of $1,108,000. On or about August 5, 1988, the prime contractor for the center project contracted with the plaintiff to complete plumbing and heating work in the amount of $1,245,385.

In February 1989, plaintiff became concerned about the prime contractor's failure to pay plaintiff for work plaintiff had completed on the projects. As of February 1989, plaintiff maintains that it was owed approximately $450,000 for work it had performed on the housing project and approximately $60,000 for work it had performed on the center project. On March 20, 1989, plaintiff sued the prime contractor, the McNews, Certified Surety Management, Inc. and others, alleging that the defendants in such suits had "engaged and combined to engage in fraudulent activities and fraudulent conduct," including "making misrepresentations and omitting material facts concerning the financial status and valuation of assets and debts of ALEX MCNEW and HAZEL MARIE MCNEW, including but not limited to representations concerning HAZEL MARIE MCNEW and ALEX MCNEW'S solely owned real estate, valued at $38,266,992 and $38,266,923 respectively, to induce the Corps to award the Contract to IMT d/b/a MERIDIAN . . . ."

Following the filing of the March 20, 1989 lawsuits, CSMI paid plaintiff approximately $20,000 on the work plaintiff had performed and gave plaintiff assurances that the McNews would provide the financing to pay plaintiff and to complete the projects. In April 1989, the U.S. Army Corps of Engineers found the prime contractor in default on both projects and terminated the prime contractor. In April or May of 1989, the McNews entered into takeover agreements with the United States Army Corps of Engineers. On May 16, 1989, the plaintiff entered takeover subcontracts with CSMI to complete the projects, and dropped the lawsuits filed in March 1989. Although the McNews initially made payments to the plaintiff against the outstanding amounts owed to the plaintiff on the projects, by early 1991 plaintiff maintains that it learned of the Corps' intention to terminate the McNews for default on the projects. At such time, plaintiff states its project manager learned from the Recorder of Deeds of McDowell County that the McNews did not own the amount of land that they represented in their affidavits. In March 1991, the Corps officially terminated the McNews for default on the projects. Default judgment was entered against the McNews and in favor of the plaintiff in the amount of $274,740.93 on the center project on April 29, 1992. A subsequent default judgment was entered against the McNews and in favor of plaintiff for $381,000 on the housing project. Plaintiff filed this suit against defendant First National Bank on December 7, 1992.

On July 6, 1993, the defendant First National filed a motion for summary judgment in this action. In its memorandum in support thereof, First National maintains that the plaintiff's action is barred by the applicable statute of limitations, that the Miller Act does not impose upon the signatory of a certificate of sufficiency a duty to investigate the facts contained in the sureties' affidavit, and that there are no questions of material fact as to essential elements of the plaintiff's claims of negligence, negligent misrepresentation, and fraud. In its response to defendant's motion for summary judgment, plaintiff maintains that its causes of action did not accrue until plaintiff was injured by defendant's actions and such injury did not take place until the plaintiff had reason to question the sureties' ability to meet their obligations. The plaintiff argues that it did not obtain such knowledge until February 1991. In addition, the plaintiff alleges that, pursuant to West Virginia law, the exact time at which a cause of action for tort or fraud accrues is a question of fact for determination by a jury. Finally, the plaintiff states that there exist questions of material fact with regard to the elements of negligence, negligent misrepresentation, and fraud as alleged in plaintiff's amended complaint.

Summary judgment is appropriate only when, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Miller v. Leathers*, 913 F.2d 1085 (4th Cir.1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). A fact is deemed "material" if proof of its existence or non-existence would affect the disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The entry of summary judgment is, upon motion, mandated against a party who fails to make a showing sufficient to establish the existence of an essential element of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The plaintiff's allegations of negligence, negligent misrepresentation, and fraud are governed by a two-year statute of limitations. West Virginia Code Section 55–2–12 states that "[e]very personal action for which no limitation is otherwise prescribed shall be brought ... [w]ithin two years next after the right to bring the same shall have accrued, if it be for damage to property...." The plaintiff's claims are clearly governed by the two-year statute of limitations provided for under West Virginia Code Section 55–2–12. *See Childers Oil Co., Inc. v. Exxon Corp.*, 960 F.2d 1265, 1271 (4th Cir.1992); *Stemple v. Dobson*, 184 W.Va. 317, 400 S.E.2d 561, 564 (1990). The pertinent question in this action is precisely when the two-year statute of limitations began to run with regard to plaintiff's claim. The plaintiff claims that, because it did not suffer substantial damages until after the Corps of Engineers terminated the McNews for default on both projects, its action did not accrue until March 1991. Plaintiff further asserts that it did not learn of the true value of the McNews' land until November 1992. Accordingly, plaintiff argues that its causes of action accrued less than two years prior to the filing of this action on December 11, 1992. The plaintiff further argues that its causes of action could not have accrued before plaintiff incurred actual damage from defendants' alleged negligent and fraudulent acts. Such damage occurred, according to plaintiff, when the McNews defaulted on their obligations and were terminated by the Corps of Engineers in or about March 1991.

The defendants, however, paint a markedly different picture as to when the plaintiff's causes of action accrued. The defendants note that in February 1989, the prime contractor was substantially behind in its payments to the plaintiff for work it had performed on the projects. As a result of such delinquencies, the plaintiff filed suit against the prime contractor, the McNews, and various others in March 1989. In the March 20, 1989 lawsuits, plaintiff alleges that the defendants in such suits had engaged in fraudulent conduct, including misrepresenting and omitting facts regarding the valuation of assets and debts of the McNews. Attached to the complaints filed in the March 20, 1989 law-

suits were the affidavit filed by the McNews, as well as the certificate of sufficiency signed by Ms. Cherry. The defendants argue that the March 1989 lawsuits establish conclusively that the plaintiff was aware, at the time the lawsuits were filed, that the information contained in the McNews' affidavit was inaccurate. Accordingly, the defendants argue that the plaintiff's causes of action in relation to the certificates of surety accrued at the latest on March 20, 1989.

In *Stemple v. Dobson*, the West Virginia Supreme Court of Appeals held that:

> [W]here a cause of action is based on tort or on a claim of fraud, the statute of limitations does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury.

*Stemple*, 400 S.E.2d at 565. The United States Court of Appeals for the Fourth Circuit, in interpreting the *Stemple* holding, found that "[t]he court identifies the 'injury' as the thing to be discovered, not that the defendant's state of mind or breach of duty may legally entitle the plaintiff to recover damages." *Childers*, 960 F.2d at 1272. In the present case, the "thing to be discovered" was the fact that the information contained in the affidavit executed by the McNews was inaccurate, and thus to the extent that the certificate of sufficiency signed by Ms. Cherry may have verified the facts contained in the affidavit, it was also inaccurate. Accordingly, the determination as to when the plaintiff's causes of action accrued hinges upon the question of when the plaintiff knew, or by the exercise of reasonable diligence should have known, that the information contained in the McNews' affidavit and the certificate of sufficiency signed by Ms. Cherry was inaccurate. A review of the record in this case leads to the inescapable conclusion that the plaintiff had such knowledge, or through the exercise of reasonable diligence could have obtained such knowledge, in March 1989.

In the plaintiff's March 1989 lawsuits, the plaintiff maintains that the defendants in such suits "have engaged and combined to engage in fraudulent activities and fraudulent conduct" with respect to Plaintiff and other subcontractors, including:

> a. "making misrepresentations and omitting material facts concerning the financial status and valuation of assets and debts of ALEX MCNEW and HAZEL MARIE MCNEW, including but not limited to representations concerning HAZEL MARIE MCNEW and ALEX MCNEW'S solely owned real estate, valued at $38,266,992 and $38,266,923 respectively, to induce the Corps to award the contract to IMT d/b/a MERIDIAN...."

The plaintiff further contended in the March 1989 lawsuits that the defendants in such suits "made numerous misrepresentations and omissions of material facts" regarding the "Subcontract, the Contract, the Bonds, the Assignment of Contract proceeds to Bank, and the Project." Such misrepresentations and omissions, the plaintiff alleged, constituted a violation of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). The plaintiff's claims within its March 20, 1989 lawsuits conclusively establish that the plaintiff knew at that time, or had reason to know at that time, that the information contained in the McNews' affidavits was false and inaccurate. In addition, Henry Beall, Jr., owner of plaintiff company, admitted in his deposition taken on June 19, 1993, that he had a copy of the McNews' affidavit of individual surety and the certificate of sufficiency signed by Ms. Cherry at the time the March 20, 1989 suits were filed. (Deposition of Henry Beall, Jr., June 19, 1993 (hereinafter "Beall Deposition"), at 63). Therefore, the plaintiff not only was aware in March 1989 that the McNews' affidavit was inaccurate, plaintiff was also aware at that time that Ms. Cherry had signed the certificate of sufficiency accompanying such affidavit. The court, therefore, finds that the plaintiff knew no later than March 20, 1989, that the information contained in the McNews' affidavit and arguably confirmed by Ms. Cherry's signature on the certificate of sufficiency, was incorrect.

The plaintiff maintains, however, that although it was aware in 1989 that the information in the affidavit may be inaccurate, it was not aware that the McNews did not have

sufficient assets to insure the costs of the projects themselves. Such argument is unpersuasive. The very fact that the plaintiff knew that the affidavits were inaccurate in any regard, places upon it a reasonable duty to further investigate the true value of the McNews' property. In its memorandum in opposition to defendants' motion for summary judgment, the plaintiff states that in early 1991 its project manager, Mr. Miller, called the Recorder of Deeds for McDowell County in order to determine the worth of the McNews' land, and was told that the McNews did not own as much land as they had represented in their affidavits. Such a call could have just as easily been made in March 1989 when the plaintiff became concerned that the McNews' affidavits were incorrect. In fact, reasonable diligence would have required the plaintiff to have made such an inquiry. Thus, the plaintiff's argument that it was unaware of the extent to which the affidavits were inaccurate is unpersuasive.

The plaintiff further maintains that the discovery rule, recognized under West Virginia law, effectively tolled the statute of limitations until early 1991 when the plaintiff learned that the McNews did not own the amount of land they had represented in their affidavits. In *Childers,* the United States Court of Appeals for the Fourth Circuit held that the discovery rule "tolls a statute of limitations until the plaintiff has, or ought to have, answers to two questions: Am I injured? Who injured me?" 960 F.2d at 1272. As is discussed herein, the plaintiff clearly had the answers to these two questions in March 1989. The plaintiff knew at that time that the information contained in the McNews' affidavit was inaccurate, and further knew that Ms. Cherry had signed the certificate of sufficiency attached to such affidavit.

The plaintiff maintains, however, that it was not actually injured until the McNews defaulted on the takeover agreements entered into by the plaintiff in early 1991. The record of this action, however, does not support the plaintiff's contention in this regard. The plaintiff admits within its memorandum in opposition to defendant's motion for sum-

mary judgment that, in February 1989, the plaintiff was owed approximately $450,000 for work it had performed on the housing project and approximately $60,000 for work it performed on the center project. Had such a delinquency not been substantial, it is difficult to comprehend the reasons for the plaintiff's filing of the March 20, 1989 lawsuits. The mere fact that the plaintiff agreed of its own volition to enter into takeover agreements and dismiss the March 20, 1989 lawsuits, does not toll the statute of limitations in this action. The fact remains that the plaintiff was damaged in February 1989 by virtue of the substantial delinquency on the part of the prime contractor. If the information contained in the McNews' affidavits was inaccurate, and they did not own land sufficient to secure their surety agreement, the McNews were as incapable of meeting their obligations in February 1989 as they were in early 1991. It is only through the plaintiff's own actions in entering the takeover agreements and dropping the 1989 lawsuits that the McNews were not forced to fulfill their obligations under their surety agreement in February 1989. Had payment been so required of the McNews in 1989, as the evidence now reveals, they would not have had sufficient property to support such obligation. Therefore, despite the plaintiff's entry of takeover agreements in 1989, plaintiff was, in fact, damaged at that time by the prime contractor's delinquency and the sureties' inability to fulfill their obligations under the surety agreement.

The primary cases within this jurisdiction cited by the plaintiff in support of its argument that plaintiff had not been damaged in 1989 are easily distinguishable. The holding in *Howard v. United Fuel Gas Co.,* 248 F.Supp. 527 (S.D.W.Va.1965), involved an explosion in 1963 of a gas line installed at some date between 1953 and 1955. Under such facts, the *Howard* court determined that the statute of limitations did not begin to run at the time the line was installed because there was no cause of action until the explosion took place in 1963. In the present case, unlike *Howard,* the plaintiff's damages were not caused by a ticking time bomb which raised no reasonable suspicion. Instead, the plaintiff had every reason in 1989 to believe

that the information contained in the McNews' affidavit may be inaccurate. Unlike the plaintiffs in *Howard,* the plaintiff in the present action was on notice that a potential cause of action existed in 1989, and, in fact, filed such a cause of action against other parties. Had the plaintiffs in *Howard* followed the course followed by the plaintiff in this case, and had discovered the defect in the gas line two years prior to the explosion, but filed no action regarding such defect, it is likely that the court's holding in *Howard* would have been significantly different.

The plaintiff also cites *Patrick v. Sharon Steel Corp.,* 549 F.Supp. 1259 (N.D.W.Va. 1982). A portion of the specific language cited by the plaintiff from the *Patrick* holding actually supports the court's holding announced herein. The plaintiff cited the *Patrick* court's holding that it was inappropriate to say that a cause of action had accrued until the plaintiff " 'had a reasonable basis for believing or a reasonable means of ascertaining' that she had sustained an injury due to the negligence of another." *Id.* at 1264; Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 17. As the court has discussed herein, plaintiff had a reasonable basis for believing in March 1989 that the McNews' affidavit was inaccurate and, thus, the certificate of sufficiency signed by Ms. Cherry, insofar as it affirmed the information contained in the affidavit, was also inaccurate. The court, therefore, finds that the holding in *Patrick* is not supportive of the plaintiff's contention for which it is cited.

■ Finally, the plaintiff maintains that the holding in *Stemple v. Dobson* establishes that the point in time in which a statute of limitations begins to run is a question of fact to be answered by a jury. *Stemple,* 400 S.E.2d at 565. Plaintiff correctly cites the language from the *Stemple* opinion. However, it is a well-settled principle of law that while state law supplies the length of a limitations period, federal law determines when that period begins to run. *Estate of Dearing by Dearing v. Dearing,* 646 F.Supp. 903, 907 (S.D.W.Va.1986). Applicable federal law regarding this issue is found within the Fourth Circuit's holding in *Childers.* Interpreting the *Stemple* holding, the United States Court of Appeals for the Fourth Circuit in *Childers* held:

> Appellants seize the *Stemple* court's comment that the point in time that a plaintiff discovers enough to start the clock running is a question of fact to be resolved by a jury. Appellants argue that the district court should have let a jury decide when the statute began to run.

> We do not read *Stemple* to require submission of a statute of limitations defense on undisputed facts to a jury. . . .

> In other words, *if* resolution of a statute of limitations defense presents a genuine question of material fact, a jury should resolve it. If not, a statute of limitations may be applied as a matter of law.

*Id.* at 1272–73. In the present case it is undisputed that the plaintiff was aware, or by the exercise of reasonable diligence should have been aware, that the information contained in the McNews' affidavit, and the certificate of sufficiency insofar as it verified such affidavit, was inaccurate. In the event that there remained a question of fact as to when the plaintiff was aware of such inaccuracies, the court would be inclined to submit such issue to a jury for resolution. However, because no such dispute is present in this action, a resolution of the statute of limitations question by the court is appropriate. It is undisputed within the record that the plaintiff filed suit on March 20, 1989, alleging that the McNews' affidavit was inaccurate. It is further undisputed that the complaints in the March 1989 suits were accompanied by the McNews' affidavit and the accompanying certificate of sufficiency signed by Ms. Cherry. Finally, the record reflects that the amount of land owned by the McNews was apparently easily accessible through inquiry of the Recorder of Deeds of McDowell County, as evidenced by the fact that the plaintiff learned of the amount of land owned by the McNews from such source in 1991. The court, therefore, finds, as a matter of law, that the plaintiff's causes of action against the defendants accrued on March 20, 1989, and that the statute of limitations applicable to such actions began running on that date.

Accordingly, the court will grant summary judgment in favor of the defendants.

■ As alternative grounds for the court's ruling granting summary judgment in favor of the defendants, the court finds that the express language of the Miller Act did not impose a duty upon the defendants to conduct a personal investigation prior to signing a certificate of sufficiency. This identical question was addressed in *Goldman Services Mechanical Contracting, Inc. v. Citizens Bank & Trust Co. of Paducah*, 812 F.Supp. 738 (W.D.Ky.1992). In *Goldman*, a group of subcontractors filed suit against a bank whose employee signed a certificate of sufficiency accompanying the surety's affidavit. The plaintiff in *Goldman*, as in the case *sub judice*, claimed that the language in paragraph 5 of the instructions contained in the certificate of sufficiency imposed a duty of investigation upon the signatory of the certificate of sufficiency. Paragraph 5 states, in pertinent part, that "[f]urther certificates showing additional assets, or a new surety, may be required to assure protection of the Government's interests. Such certificates must be based on the personal investigation of the certifying officer at the time of the making thereof, and not upon prior certifications." The court in *Goldman* found that the duty of personal investigation relates only to further certificates which may be required. The *Goldman* court further found:

> No other language in the Act, its implementing regulations, or the certificate itself refers to an investigation by the certifier. Giving the words of the statute their plain, common and ordinary meanings, there is no requirement of investigation imposed. The court declines to supply by inference what Congress has chosen to omit.
>
> Even if the court were inclined to infer that Congress intended to impose an investigation requirement, the statute contains no indication of the scope or extent required. Morris did perform some investigation. She reviewed the documents provided to her by Sisson. Without guidelines for the performance of an investigation, any attempt to define a statutory standard

of care for the purposes of a negligence action is futile.

*Goldman*, 812 F.Supp. at 742. During the pendency of this action, the district court's opinion in *Goldman* was affirmed by the United States Court of Appeals for the Sixth Circuit. *Goldman Services v. Citizens Bank & Trust Co.*, Nos. 92–5654, 92–5655, 1993 WL 428641 (6th Cir. October 21, 1993) (unpublished opinion). Having reviewed the Miller Act and the language contained within the certificate of sufficiency, this court is in agreement with the decision reached in the *Goldman* case. The court finds no language within the Miller Act, as it existed at the time the certificate of sufficiency was signed, or within the certificate of sufficiency itself, which imposes upon the signatory of the certificate of sufficiency a duty to conduct a personal investigation. Accordingly, the court finds that neither the Act nor the certificate of sufficiency imposes such a duty on Ms. Cherry in this case.

■ The court notes, however, that even if such a duty were imposed, the record reflects that, prior to signing the certificate of sufficiency, Ms. Cherry did, in fact, review the appraisal conducted by Robert Duran and the map accompanying such appraisal, as well as the certification of appraised value of the property signed by Mr. Duran and A.E. Banks. Even if the Miller Act or the certificate of sufficiency imposed a duty of investigation, it cannot be said that the class of individuals authorized to sign the certificate of sufficiency would be expected to conduct a more detailed investigation than the review of documents undertaken by Ms. Cherry. Moreover, Ms. Cherry executed a disclaimer letter at the time she signed the certificate of sufficiency, in which she stated that she could not guarantee the accuracy of the information contained in the McNews' affidavit. Under such circumstances, it strains logic and common sense to state that Ms. Cherry should have done more.

■ Finally, the *Goldman* decision further supports the court's finding that summary judgment in favor of the defendants is appropriate in this case. The plaintiff, in its amended complaint, sets forth a cause of action against the defendants for negligent

misinformation. Such claims are governed by Section 552 of the RESTATEMENT (SECOND) OF TORTS. One of the requirements contained within Restatement Section 552 is that the liability for negligent misinformation is limited to loss suffered "(a) by the person or one of a limited group of persons for whose benefit and guidance he [the supplier of the information] intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction." RESTATEMENT (SECOND) OF TORTS § 552 (1977). The test set forth in section 552 of the Restatement was adopted by the West Virginia Supreme Court of Appeals in *First National Bank of Bluefield v. Crawford,* 182 W.Va. 107, 386 S.E.2d 310 (1989). Interpreting the Restatement, the *Goldman* court found that the subcontractors who filed the action in that case were not the intended recipients of the information set forth in the certificate of sufficiency. In so holding, the court found:

> The certificate of sufficiency is provided for the convenience of the government to aid in determining the sufficiency of a surety. 48 C.F.R. 28.202–2 (1987). Even if Goldman could offer evidence that it did rely on the certificate, it is not among the limited class for whom the information was intended, as required by subsection (2) of Section 552.

*Goldman,* 812 F.Supp. at 743. The *Goldman* analysis is equally applicable in the present case. Because the plaintiff is not the intended recipient of the certificate of sufficiency signed by Ms. Cherry, even if plaintiff did rely on such certificate, it is not in the limited class for whom such information was intended. Therefore, the plaintiff is unable to meet the requirements for a claim of negligent misinformation pursuant to West Virginia law. For the reasons herein stated, the

court will, in a separate judgment order this date, grant summary judgment in favor of the defendants.\* Having granted the defendants' motion for summary judgment on the grounds herein discussed, the court finds it unnecessary to address the remaining issues raised by the defendants in their motion for summary judgment.

---

\* In the plaintiff's original complaint filed on December 11, 1992, Ms. Cherry was not personally named as a defendant. On January 14, 1994, the court granted the plaintiff leave to amend its complaint to name Ms. Cherry as a party defendant. Although Ms. Cherry has not moved for summary judgment in this action, the court has herein found that the plaintiff's actions are barred by the applicable statute of limitations. Such finding is equally applicable to the claims against Ms. Cherry and, thus, the court's ruling granting summary judgment disposes of this action as to all defendants.