**Loral TERRACOM, Plaintiff–Appellant,**

v.

**VALLEY NATIONAL BANK, a federally chartered bank; Citizens Bank Trust Co., a Kentucky corporation and state chartered bank, Defendants–Appellees.**

No. 93–55660.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 1994.

Decided March 7, 1995.

Davide Golia, Marks & Golia, San Diego, CA, for plaintiff-appellant.

Michael J. Rusing, Rusing & Lopez, Tucson, AZ, Kerry D. Smith, McMurray & Livingston, Paducah, KY, for defendants-appellees.

Before CHOY, FARRIS and BRUNETTI, Circuit Judges.

CHOY, Circuit Judge:

Loral Terracom ("Loral") appeals the district court's order granting Citizens Bank and Trust Company's ("Citizens") and Valley National Bank's ("Valley") joint Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Loral alleges that Citizens and Valley ("the Banks") negligently failed or unreasonably performed investigations of the financial strengths of applicant sureties for bonds submitted in accordance with the Miller Act, 40 U.S.C. § 270a, before executing Certificates of Sufficiency ("Certificates") in accordance with 48 C.F.R. § 28.200, et seq. Loral contends that as a result, financially unfit individuals qualified as sureties on Miller Act payment bonds to Loral's detriment.

Loral also appeals the district court's order granting Citizens' Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal juris-

diction. Having jurisdiction under 28 U.S.C. § 1291, we affirm both dismissals.

## I

Loral was a subcontractor to West Coast Construction ("West Coast"). West Coast had a contract for the construction of communications/electronics improvement at Camp Pendleton Marine Corps Base, California ("Project") with the United States Department of the Navy ("Government").

40 U.S.C. § 270a of the Miller Act requires that a contractor of any public building or work provide a payment bond with a surety satisfactory to the federal officer awarding the contract before any contract in excess of $25,000 is awarded. The purpose of the payment bond is to protect all persons supplying labor and materials for the completion of the Project. *See* 40 U.S.C. § 270(a)(2). The government contracting officer has the sole responsibility of determining the acceptability of an individual surety applicant. *See* 48 C.F.R. § 28.202–2(a) (1987). In making the determination, the officer considers the information on the Standard form 28 as well as other factors, such as the applicant surety's outstanding bond commitments. *See* 48 C.F.R. § 28.202–2(a), (b) (1987).

In accordance with the Miller Act, West Coast executed two payment bonds with individual sureties, Purdy L. Sisson ("Sisson") and Hugh J. Johnson ("Johnson"), in July, 1987 and submitted the bonds to the Government. In accordance with 48 C.F.R. § 28.202–2(b) in effect in 1987, each bond was accompanied by a Standard Form 28, containing a sworn Affidavit of Individual Surety ("Affidavit") and the Certificate on the reverse side. The Affidavit contains a worksheet where the surety applicant must list his assets and liabilities and declare his intent to become a surety on a federal works project. The Certificate provides that the surety named in the Affidavit is personally known to the signatory and that "to the best of [the signatory's] knowledge," the facts stated in the Affidavit are true. The Certificate does not contain specific instructions as to either the method or the extent of verification for the information provided. The instructions on the Affidavit provide that the certifier can be:

an officer of a bank or trust company, a judge or clerk of a court of record, a United States district attorney or commissioner, a postmaster, a collector or deputy collector of internal revenue, or any other officer of the United States acceptable to the department or establishment concerned.

The Certificate for Sisson's Affidavit was signed by Janis Morris ("Morris"), an officer of Citizens. Citizens is a Kentucky corporation doing business in the Commonwealth of Kentucky. The Certificate accompanying Johnson's Affidavit was signed by Carol J. Reynolds ("Reynolds"), an officer of Valley, a federally chartered bank with its principal place of business in Phoenix, Arizona.

West Coast subsequently breached its subcontract with Loral, and Loral filed a complaint in the United States District Court, Southern District of California, alleging among other claims, breach of contract, intentional and negligent misrepresentation, and for enforcement of the Miller Act. Johnson, Sisson, Dwight C. Lundell (a personal surety on a third payment bond), West Coast and its two general partners were named as defendants. In addition, Loral named the Banks as defendants for negligently executing the Certificates. On November 20, 1989, the Banks were dismissed without prejudice on the ground that Loral's claims against the Banks were premature. Although Loral obtained a court judgment against the remaining defendants on April 6, 1992, it has been unable to collect any portion of the judgment.

In a second action, Loral renewed its assertions against the Banks for negligently investigating Johnson's and Sisson's financial strengths before signing the Certificates. The district court granted the Banks' simultaneous motions to dismiss for failure to state a claim upon which relief can be granted. The district court also granted Citizens' motion to dismiss for lack of personal jurisdiction. Judgment was entered on April 14, 1993. Loral timely filed an appeal to this court on May 3, 1993.

## II

Loral's first contention of error is that the district court's Fed.R.Civ.P. 12(b)(6) dismiss-

al was improper because (1) the district court considered matters outside the pleadings; and (2) the Banks owed a duty to investigate the veracity of the financial information provided by the sureties.

We review de novo a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Frey v. California,* 982 F.2d 399, 401 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 3000, 125 L.Ed.2d 693 (1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In applying this standard, we assume that all of Loral's allegations are true. *See Reddy v. Litton Indus., Inc.,* 912 F.2d 291, 293 (9th Cir.1990), *cert. denied,* 502 U.S. 921, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991).

First, Loral contends that the district court erred procedurally when it considered matters outside the pleadings while ruling on the 12(b)(6) motion to dismiss. During the hearing when it granted the Banks' Fed. R.Civ.P. 12(b)(6) motion to dismiss, the district court made a passing reference to Morris' affidavit which Citizens had submitted in support of its motion to dismiss for lack of personal jurisdiction. The district court, however, did not rely upon the affidavit to render its decision. Rather, the motion to dismiss was granted on the basis of the district court's interpretation of the Miller Act, its accompanying regulations and the qualified language used in the Certificate.

The district court determined that Loral was not entitled to relief under any set of facts because the Banks did not owe a duty to perform an independent investigation into the financial condition of each applicant surety. The court's decision was based solidly on the allegations in the complaint; the reference to Morris' affidavit was a minor paren-

thetical observation rather than a material basis for the district court's decision.

■ Next, Loral contends that the district court erred in deciding that the Banks did not owe a duty of care to independently investigate the veracity of the financial information provided by the applicant sureties. Loral argues that such a duty arises under common law principles of negligence rather than under the Miller Act. Loral first contends that the Banks' duty arises from the practical use of the certification by the federal contracting officers in approving sureties. Loral, however, fails to explain how the federal contracting officer's possible reliance, without more, establishes a duty of care.

■ Second, Loral argues that the language in the Certificate establishes a duty of care. We find no language in the Miller Act or its accompanying regulations which imposes such a duty upon the Banks.[1] The Certificate states:

> I Hereby Certify, That the surety named herein is personally known to me; that, in my judgment, said surety is responsible, and qualified to act as such; and that, to the *best of my knowledge,* the facts stated by said surety in the foregoing affidavit are true. (emphasis added).

The phrase, "to the best of my knowledge," indicates that the certifier attests for the surety on the basis of the certifier's previous, personal knowledge about the surety and an examination of any documents provided with the Affidavit. The language limits the representation to what the maker personally knows. *See Northwestern Mutual Life Ins. Co. v. Gridley,* 100 U.S. 614, 616, 25 L.Ed. 746 (1880). It puts the hearer on notice that further investigation may be needed.

The only situation where a certifying official is required to conduct an investigation arises when the government contracting officer has requested continuing proof of acceptability after the contract has been awarded.

---

**1.** The Sixth Circuit has likewise found that the Miller Act does not impose a duty upon the signatories of the Certificate to conduct a personal investigation of the sureties' financial strengths. *See Goldman Servs. Mechanical Con-* *tracting, Inc. v. Citizens Bank & Trust Co.,* 9 F.3d 107, 1993 WL 428641 (6th Cir.1993), *aff'g* 812 F.Supp. 738 (W.D.Ky.1992); *see also, Beall Plumbing & Heating Co. v. First Nat'l Bank,* 847 F.Supp. 1307, 1314 (S.D.W.Va.1994).

48 C.F.R. § 28–202.2(c) (1987). Instruction 5 on the Certificate imposes a duty on the executing official to conduct a personal investigation for *further* certificates showing additional assets. Specifically the instruction provides:

> Further certificates showing additional assets, or a new surety, may be required to assure protection of the Government's interest. Such certificates must be based on the personal investigation of the certifying officer at the time of the making thereof, and not upon prior certifications.

The language merely instructs the certifier to conduct a personal investigation of *additional* facts not covered by the original Certificate and does not impose a duty to investigate for the initial certification.

■ Finally, Loral contends that the limitation placed upon those who may sign the Certificate establishes a duty of care. We disagree. Rather than establishing a duty of care, the various types of individuals authorized to sign the Certificate indicate that a detailed investigation into the applicant surety's financial situation is not required before certification. Such an investigation would be beyond the scope of expertise for many of these individuals. Furthermore, interpreting the regulations in a manner as to impose a duty of independent investigation would lead to absurd results.

For example, Kentucky has a statute which makes it a misdemeanor for a person to sign or prepare a document providing financial information unless she holds an accounting license. Ky.Rev.Stat.Ann. § 325.990 (Michie 1994). Imposing a duty to conduct an independent investigation into an applicant surety's financial strength would subject any certifying official, without an accounting license, to criminal liability. The drafters of the regulations accompanying the Miller Act could not have intended such a result.

We find that the Banks did not owe a duty to conduct an independent investigation into the financial condition of the applicant surety before signing the Certificates. Thus, Loral cannot win under any set of facts. We therefore affirm the district court's grant of the motion to dismiss.

We find it unnecessary to reach the issue of proximate causation because we find that the banks did not owe a duty to investigate. Furthermore, we refuse to consider Loral's assertion that the Banks are liable under a common law negligent misrepresentation theory. Such a theory was neither pled in the complaint nor brought before the district court. It is a well-established precedent that this court will not consider contentions which were not originally brought before the district court. *See Fry v. Melaragno,* 939 F.2d 832, 835 (9th Cir.1991); *Eason v. Dickson,* 390 F.2d 585, 589 (9th Cir.), *cert. denied,* 392 U.S. 914, 88 S.Ct. 2076, 20 L.Ed.2d 1373 (1968).

### III

Loral's second contention of error is that the district court improperly granted Citizens' 12(b)(2) motion to dismiss for lack of personal jurisdiction. Where jurisdictional facts are not disputed, we review de novo a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Brainerd v. Governors of the Univ. of Alberta,* 873 F.2d 1257, 1258 (9th Cir.1989). The district court's factual findings on all jurisdictional issues must be accepted unless clearly erroneous. *Nike, Inc. v. Commercial Iberica de Exclusivas Deportivas, S.A.,* 20 F.3d 987, 990 (9th Cir.1994).

■ We apply the long-arm statute of the state in which the district court sits in this diversity case where no federal statute governing personal jurisdiction is applicable. *See Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1484 (9th Cir.1993), *citing Hylwa, M.D., Inc. v. Palka,* 823 F.2d 310, 312 (9th Cir.1987). California's long-arm statute allows the exercise of personal jurisdiction over defendants to the fullest extent permitted by due process. *Core–Vent Corp.,* 11 F.3d at 1484, *citing Data Disc, Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1286 (9th Cir.1977). "[D]ue process requires only that ... [the person] have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ Loral argues that the district court can exercise "specific" or "limited" personal jurisdiction over Citizens because the "cause of action arises out of or is related to the defendant's forum activities...." *Hirsch v. Blue Cross, Blue Shield,* 800 F.2d 1474, 1477 (9th Cir.1986). In order to determine whether the exercise of specific jurisdiction comports with due process, we apply the following three part test:

(1) The defendant must have done some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must arise out of the defendant's forum-related activities; and

(3) the exercise of jurisdiction must be reasonable.

*Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir.1990) (citations omitted), *rev'd on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

■■ We find that Citizens did not purposely avail itself of the privilege of conducting activities in California. The purposeful availment standard requires more than foreseeability of causing injury in another state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Rather, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The purposeful availment prong prevents defendants from being haled into a jurisdiction through "random," "fortuitous," or "attenuated" contacts. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183.

Citizens' only place of business is McCracken County, Kentucky, and its only contact with California has been through Morris' act of signing the Certificates. Morris, presumably acting as an agent of Citizens, signed a number of Certificates without specific knowledge that one of those Certificates may be used for a federal works project based in California.

Loral asserts that by agreeing to execute these Certificates, Citizens purposefully directed its activities to other states and knew that it would be subject to liability in any of these other states for its actions. Loral fails to give any supporting authority for this novel assertion. In fact, Loral's assertion contradicts established law on personal jurisdiction. "[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Super. Ct.,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987).

Loral also argues that Citizens could have foreseen being haled into court in California because the code N62474–86–C–0388 typed on the Affidavit indicated or should have indicated that the signed Certificate would be used in a federal works project in California. First, there is a question as to whether the code was typed on the Certificate at the time of Morris' signature. Citizens claims that the code number appeared in Block No. 12 of the Certificate *after* the Certificate left Morris' control. In support, Citizens presents the affidavits of both Morris and Sisson stating that the code did not appear on the Certificate at the time of Morris' signature.

Loral disputes both Morris' and Sisson's affidavits and asserts that the code number was present at the time of Morris' signature. Loral points to the perfect match between the typeface and alignment used in items 10 and 12 and the rest of the form to support its contention. Such evidence which turns on the skill of the second typist, however, is tenuous at best.

Even assuming *arguendo* that the code was on the Certificate at the time of Morris' signature, it is too much to assume, without more, that Morris should have known that the code indicated a connection to California. The state of California was never noted on the Certificate nor was it ever mentioned in discussions between Morris and Sisson. Indeed, the district court noted that Loral had not presented any evidence that indicates Morris knew or should have known the significance of the code.

Citizens has not purposefully availed itself of the privilege of conducting activities within California by signing the Certificates. The contact between California and Citizens through Citizens' act of signing the Certificates was fortuitous and does not justify the district court's exercise of personal jurisdiction.

■ The second prong of the specific jurisdiction test is met if "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen. *Carnival Cruise Lines*, 897 F.2d at 385–86. The contracting officer has the sole responsibility of determining the acceptability of an individual surety. *See* 48 C.F.R. § 28.202–2(a) (1987). In addition, the regulations implementing the Miller Act made clear that the contracting officer's consideration of the Certificate was only a part of the independent evaluation. *See* 48 C.F.R. § 28.202–2(b) (1987). Under such circumstances, it cannot be said that "but for" Citizens' signing the Certificates, the Government official would not have approved Sisson as a surety.

Finally, we consider the following factors to determine the reasonableness of the district court's exercise of jurisdiction, the third prong:

(1) [T]he extent of the defendant['s] purposeful interjection into the forum state's affairs;

(2) the burden on the defendant of defending in the forum;

(3) the extent of conflict with the sovereignty of the defendants' state;

(4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum.

*Core–Vent Corp.*, 11 F.3d at 1487–88. We balance all seven factors, recognizing that none of the factors is dispositive in itself. *Id.* at 1488.

■ Loral could not prove the first prong of purposeful availment, thus, the first factor of purposeful interjection weighs heavily in Citizens' favor. Likewise, the second factor, the burden on Citizens of having to defend in California, favors Citizens. Ninth Circuit cases have been inconsistent in determining whether the plaintiff's burden should alter the impact of this second factor on the overall reasonableness determination. *Core–Vent*, 11 F.3d at 1488–89. This standard need not be resolved in this case, however, because it is as burdensome for Citizens and its witnesses to travel to California as it is for Loral and its witnesses to travel to Kentucky. Where the burdens are equal, the second factor tips in favor of Citizens because the law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden. *See Insurance Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1272 (9th Cir.1981).

There is minimal conflict with Kentucky's sovereignty, therefore, the third factor weighs in favor of Loral. Kentucky has little interest in resolving claims involving a federal works project in California, a California prime contractor and bonds accepted in California by a California contracting officer. However, the fourth factor, California's interest in adjudicating the dispute, does not necessarily favor Loral. Although California has some interest in adjudicating the suit because it is obligated to protect its residents from tortious acts of non-resident defendants, its interest is not as strong in this case because Loral, a Delaware corporation which is a wholly owned subsidiary of a New York corporation, does not operate exclusively in California. *See Karsten Mfg. Corp. v. United States Golf Ass'n*, 728 F.Supp. 1429, 1436 (D.Ariz.1990).

Efficiency of forum, the fifth factor, is evaluated by looking at where the witnesses and the evidence are likely to be located. *Core–Vent*, 11 F.3d at 1489. The fifth factor does not lie in either party's favor because there are witnesses and evidence in both California and Kentucky.

The sixth factor of convenience and effectiveness of relief for Loral weighs in favor of Citizens. Loral argues that forcing it to bring claims in two jurisdictions will require it to prove its case twice, possibly leading to inconsistent verdicts. Loral's argument is

not convincing. The acts of Valley and Citizens are discrete, and the actions of each bank will be judged individually. Finally, the seventh factor, the existence of an alternate forum, favors Citizens. The district court found, and Loral has not disputed, the fact that Kentucky could serve as an adequate alternate forum. The balance of the seven factors reveals that a California district court cannot reasonably exercise personal jurisdiction over Citizens.

On the basis of our three part analysis, we conclude that the district court correctly refused to exercise personal jurisdiction over Citizens.

Furthermore, the district court did not abuse its discretion by refusing to grant a continuance to allow Loral to conduct jurisdictional discovery. Loral failed to demonstrate how further discovery would allow it to contradict the affidavits of Morris and Sisson. "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery . . . ." *Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259 (M.D.N.C.1988).

## IV

We **AFFIRM** the district court's grant of the Banks' Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. The district court did not improperly consider matters outside the pleadings when it ruled on the Banks' 12(b)(6) motions, and Loral failed to demonstrate that the Banks owed a duty to conduct an independent financial investigation of the applicant sureties.

Likewise, we **AFFIRM** the district court's Fed.R.Civ.P. 12(b)(2) dismissal of Loral's complaint against Citizens.

**AFFIRMED.**