**Kenneth MITAN, Plaintiff,**

v.

**Doug FEENEY, et al., Defendants.**

**No. CV 07–3086SVWJWJX.**

United States District Court,
C.D. California.

July 18, 2007.

Kenneth Mitan, Pro se.

James M. Burgess, Erica Suzanne Alterwitz, Sheppard Mullin Richter & Hampton LLP, Los Angeles, CA, for Doreen Feeney and Doug Feeney.

E. Scott Palmer, Adam E. Chaikin, Palmer Lombardi and Donohue, Los Angeles, CA, for American Express Corporation.

ORDER GRANTING DEFENDANT FEENEYS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [9]; ORDER DENYING AS MOOT DEFENDANT FEENEYS' REQUEST FOR CHANGE OF VENUE [9]; ORDER GRANTING DEFENDANT AMERICAN EXPRESS'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) [17]; ORDER DENYING AS MOOT DEFENDANT AMERICAN EXPRESS'S MOTION TO STRIKE [15]

WILSON, District Judge.

## I. INTRODUCTION

Plaintiff Kenneth Mitan ("Plaintiff" or "Mitan") filed this suit against Defendants Doug and Doreen Feeney ("the Feeneys") and Defendant American Express Travel Related Services Company, Inc. ("American Express") in Los Angeles County Superior Court on January 12, 2007. Plaintiff, now proceeding pro se, alleges causes of action against the Feeneys and American Express for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). American Express filed a notice of removal on May 10, 2007 and the Feeneys joined in the removal.

On May 14, 2007, the Feeneys moved to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, for change of venue to the Eastern District of Arkansas under 28 U.S.C. § 1404(a). On May 15, 2007 American Express moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. American Express also moved to strike portions of the complaint under Federal Rule of Civil Procedure 12(f). Plaintiff filed an untimely opposition to these motions on June 14, 2007. Defendant American Express filed a reply on June 15, 2007 and the Feeneys filed a reply on July 3, 2007.

For the reasons discussed below, the Court GRANTS the Feeneys' Motion to Dismiss for lack of personal jurisdiction, DENIES as moot the Feeneys' Request for Change of Venue, GRANTS American Express' 12(b)(6) Motion to Dismiss, and DENIES as moot American Express' Motion to Strike.

## II. FACTUAL BACKGROUND

### A. Factual Allegations in the Complaint

Plaintiff alleges that he is a resident of California, that the Feeneys are residents of Arkansas, and that American Express is a New York corporation doing business in California. (Compl. ¶¶ 1–5.) Plaintiff claims that the Feeneys sold him their business, Prime Line, Inc. ("Prime Line"), in November 2004. (Compl. ¶ 8.) Plaintiff alleges that he subsequently applied for and obtained an American Express card in the name of Prime Line, pursuant to the purchase agreement. (Compl. ¶ 10.) Plaintiff alleges that the Feeneys then "wrongfully attempted to regain control" of Prime Line and "commenced a pattern of extreme, outrageous conduct intended to harass, injure, and annoy the Plaintiff." (Compl. ¶ 13.) This conduct allegedly included "false and fraudulent communications and/or representations to Defendant American Express that Plaintiff had unlawfully or illegally obtained credit cards from Defendant American Express." (Compl. ¶ 13.) Plaintiff further alleges that the Feeneys "solicited Defendant American Express to participate in such outrageous conduct" and that the Feeneys and American Express intimidated Plaintiff,

accused him of fraud and embezzlement, made unfounded reports to authorities, confiscated his personal property and medicine, and cancelled his credit. (Compl.¶ 14.) Plaintiff alleges that this conduct caused him to lose his entire investment in Prime Line and caused him to suffer emotional distress. (Compl.¶¶ 16, 17.)

Plaintiff alleges that Defendants intended to cause Plaintiff to lose his investment and intended to cause Plaintiff extreme emotional distress, "or otherwise hold Plaintiff to public scorn and ridicule." (Compl.¶¶ 15, 16.) He alleges that he suffered emotional distress including "fright, shock, nervousness, anxiety, worry, grief, mortification, humiliation, embarrassment, loss of income and loss of business investment." (Compl.¶ 17.) Plaintiff alleges that the conduct of Defendants was "willful, wanton, and intentional and designed to permanently injure Plaintiff." (Compl.¶ 18.)

### B. The Feeney's Submissions Concerning Personal Jurisdiction

Doug and Doreen Feeney each have submitted a declaration in support of their Motion to Dismiss. According to the Feeneys, the following is true: the Feeneys are residents of Arkansas; they have never been residents of California; they do not own any real or personal property in California, and they do not lease, rent or otherwise possess any real or personal property in California; they do not pay any taxes in California and maintain no bank accounts in California; Prime Line is not registered to do business in California and does not have a registered agent for service of process in California; the Feeneys and Prime Line do not and have never maintained an office in California; the Feeneys and Prime Line do not regularly buy goods or services from residents of California; they do not regularly do or solicit business in California or engage in

any advertising in California; and neither Feeney has traveled to California in more than ten years. (Doug Feeney Decl. ¶¶ 2–14; Doreen Feeney Decl. ¶¶ 2–14.)

With respect to the allegations in Plaintiff's complaint, the Feeneys state that all transactions and interactions with Plaintiff occurred in Arkansas. (Doug Feeney Decl. ¶ 15; Doreen Feeney Decl. ¶ 15.) They claim they were not aware Plaintiff resided in California and that Plaintiff represented to the Feeneys that his name was John Smith. (Doug Feeney Decl. ¶ 15; Doreen Feeney Decl. ¶ 15.) Doreen Feeney asserts that she had no contact with American Express and no contact with any California entity regarding Plaintiff. (Doreen Feeney Decl. ¶¶ 16, 17.) Doug Feeney states that he only contacted the Arkansas office of American Express about Plaintiff and never contacted American Express in California. (Doug Feeney Decl. ¶ 16.) Doug Feeney asserts that the only contact he had with California relating to Plaintiff was initiated by the Redondo Beach police after Plaintiff had been arrested. (Doug Feeney Decl. ¶ 17.) Doug Feeney also asserts that he did not know John Smith was Kenneth Mitan until Redondo Beach police told him. (Doug Feeney Decl. ¶ 17.)

### C. Requests for Judicial Notice

Plaintiff and the Feeneys have been involved in Prime Line-related litigation before (See Feeneys' Request for Judicial Notice ("RJN") Ex. B; American Express' Request for Judicial Notice ("RJN") Ex. 2.) On January 5, 2005, the Feeneys sued Mitan in the Eastern District of Arkansas for fraud in the inducement, conversion, and breach of contract. (Feeneys' RJN Ex. A; American Express' RJN Ex. 1.) Among other things, they sought declaratory judgment finding them to be sole owners of Prime Line and rescission of the

Stock Purchase Agreement. When Mitan failed to timely reply to the Feeneys' motion for summary judgment, the district court entered judgment on December 22, 2005 declaring the Feeneys sole owners of Prime Line and rescinding the Stock Purchase Agreement. Mitan moved to set aside the judgment, the district court denied his motion, and in December 2006 the Eighth Circuit affirmed the Feeneys' sole ownership of Prime Line but vacated the rescission of the Stock Purchase Agreement. (Feeneys' RJN Ex. B at 23.) Defendants ask this Court to take judicial notice of these earlier proceedings in Arkansas.[1]

### D. Plaintiff's Evidence in Opposition [2]

Plaintiff submitted a declaration in response to the Motions to Dismiss.[3] In this declaration, Plaintiff alleges additional facts not in the complaint. Plaintiff alleges that he and the Feeneys were involved in a business dispute over Prime Line in the few weeks leading up to January 12, 2005. (Mitan Decl. ¶¶ 13, 14, 15, 16.) Plaintiff alleges that he was arrested on January 12, 2005 by Redondo Beach Police. (Mitan Decl. ¶ 17.) Plaintiff alleges that the officers informed him he was be-

ing held on suspicion of committing identity theft against Doug Feeney and that the Feeneys wished to press charges. (Mitan Decl. ¶ 17, 20.) Plaintiff alleges that, while in Redondo Beach city jail, he was served with the Feeneys' complaint to rescind the Stock Purchase Agreement. (Mitan Decl. ¶ 21.)

Plaintiff has attached what he alleges to be a Redondo Beach Police Department investigation report, which states that on January 10, 2005 Doug Feeney told Redondo Beach police he was the true owner of Prime Line and had not sold his company.[4] (Mitan Decl. Ex. 5.) Plaintiff claims that he acquired this alleged police report in the course of representing himself pro se. (Mitan Decl. ¶ 49, 50.) According to Plaintiff, Feeneys' statements to police were knowingly false. (Mitan Decl. ¶ 41, 49, 50.) Plaintiff claims that Feeney falsely told police the Prime Line sale had defaulted before Plaintiff applied for an American Express credit card in Prime Line's name. (Mitan Decl. ¶ 41; Ex. 7.) Plaintiff claims that a Redondo Beach police detective testified to Feeney's statements at a preliminary hearing in court. (Mitan Decl. ¶ 41.) Plaintiff also alleges that American Express falsely told police

---

1. A court may take judicial notice of matters of public record, such as a prior order or decision, but not the truth of the facts cited therein. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir.2001).

2. Not all of these additional allegations are relevant to the analysis, but they are included to provide context for understanding Plaintiff's allegations. However, the analysis relies only on those facts which are specifically cited within the analysis.

3. The Feeneys have objected to all but three of the paragraphs in Plaintiff's declaration, mostly on irrelevance, lack of personal knowledge, and hearsay grounds. The Federal Circuit has held that hearsay may be considered at the 12(b)(2) stage if it bears "circumstantial indicia of reliability." *Beverly Hills Fan Co.*

*v. Royal Sovereign Corp.*, 21 F.3d 1558, 1562 (Fed.Cir.1994). Some district courts in the Ninth Circuit have cited this case for the same proposition. *See Agilent Techs., Inc. v. Elan Microelectronics Corp.*, 2005 WL 3260162, at *3 (N.D.Cal. Nov. 29, 2005); *Bauman v. DaimlerChrysler AG*, 2005 WL 3157472, at *5 (N.D.Cal. Nov. 22, 2005); *Voysys Corp. v. Elk Indus., Inc.*, 1996 WL 119473, at *3 (N.D.Cal. Mar.14, 1996) ("[T]he Court may consider affidavits when determining whether or not Plaintiff has established a prima facie showing of [personal] jurisdiction even if the affidavits contain hearsay evidence.")

4. The document is not authenticated, contains hearsay statements, and lacks a sufficient foundation.

that Plaintiff is a thief who pretends to buy companies in order to use their credit. (Mitan Decl. ¶ 49.)

Finally, Plaintiff alleges that during his incarceration he was denied his asthma medication for several days and suffered numerous asthma attacks. (Mitan Decl. ¶¶ 23–32.) Plaintiff alleges he suffered sickness, physical threats, and theft of a laptop computer and personal jewelry while incarcerated. (Mitan Decl. ¶¶ 38, 39, 40, 55.) Plaintiff alleges that all felony charges brought against him in California were eventually dismissed. (Mitan Decl. ¶ 52.)

## III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Feeneys argue that the complaint should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2),

### A. Legal Standard Governing a Ruel 12(b)(2) Motion

■ In order for this Court to assert personal jurisdiction over a defendant, the exercise of jurisdiction must be authorized under California's "long-arm" jurisdictional statute and comport with constitutional due process limitations. *Aanestad v. Beech Aircraft Corp.*, 521 F.2d 1298, 1300 (9th Cir.1974); see Fed.R.Civ.P. 4(k)(1)(A). Because California authorizes jurisdiction to the full extent of the Constitution, the only question before the Court is whether the exercise of in personam jurisdiction in this case is consistent with due process. *See* Cal.Code Civ. Proc. § 410.10 (2002); *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1317 n. 2 (9th Cir.1998). In the absence of a traditional basis for asserting jurisdiction (i.e., physical presence, domicile or consent), due process requires that a non-resident defendant have "certain minimum contacts with the forum [state] such that the maintenance of the suit does

not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). A defendant is subject to "specific jurisdiction" in California where (1) the defendant has purposefully availed himself of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws; (2) the cause of action arises out of the defendant's California-related activities; and (3) the exercise of jurisdiction would be reasonable. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). If the defendant's contacts are of a sufficient magnitude, it is subject to "general jurisdiction"—that is, subject to suit on any matter, including those not arising out of the in-forum activity. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–48, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

Plaintiff has the burden of establishing that jurisdiction exists over the defendants. *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir.1984). The plaintiff need only make a prima facie showing of jurisdiction to survive a jurisdictional challenge on a motion to dismiss where a court has not heard testimony or made findings of fact. *Ziegler*, 64 F.3d at 473; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir.1995); *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). For purposes of a motion to dismiss, factual allegations are taken as true, though it is appropriate when considering jurisdictional issues to look beyond the pleadings to any evidence before the Court. *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d·Cir.1993). All factual conflicts must be resolved in the plaintiff's favor. *Harris*

*Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1129 (9th Cir.2003).

In order to obtain discovery on jurisdictional facts, the plaintiff must at least make a "colorable" showing that the Court can exercise personal jurisdiction over the defendant. *See Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 946 (7th Cir.2000). This "colorable" showing should be understood as something less than a prima facie showing, and could be equated as requiring the plaintiff to come forward with "some evidence" tending to establish personal jurisdiction over the defendant. *See eMag Solutions, LLC v. Toda Kogyo Corp.,* 2006 WL 3783548, at *2 (N.D.Cal. Dec.21, 2006); *see also Orchid Biosciences, Inc. v. St. Louis Univ.,* 198 F.R.D. 670, 672–73 (S.D.Cal.2001) ("It would ... be counterintuitive to require a plaintiff, prior to conducting discovery, to meet the same burden that would be required to defeat a motion to dismiss.").

Even if the plaintiff prevails in making a prima facie showing at the 12(b)(2) stage, the Court must ultimately determine whether the showing can be met by a preponderance of the evidence—whether at a pre-trial evidentiary hearing or at trial itself. *See Metro. Life Ins. Co. v. Neaves,* 912 F.2d 1062, 1064 n. 1 (9th Cir.1990). Where the Court conducts an evidentiary hearing, the plaintiff must prove the existence of personal jurisdiction by a preponderance of the evidence. *Rano v. Sipa Press, Inc.,* 987 F.2d 580, 587 n. 3 (9th Cir.1993). The Court should then issue findings of fact upon which personal jurisdiction depended. *See Credit Lyonnais Securities (USA), Inc. v. Alcantara,* 183 F.3d 151, 154 (2d Cir.1999). If it so chooses, the Court can proceed immediately to the evidentiary hearing "stage" of deciding the personal jurisdiction question. *Data*

*Disc., Inc.,* 557 F.2d at 1285; *see also* Fed.R.Civ.P. 12(d).

**B. The Court Lacks Personal Jurisdiction Over Doreen Feeney**

Plaintiff has not alleged facts suggesting any contact between Redondo Beach police and Doreen Feeney. Plaintiff's allegations relate to Doug Feeney alone. Therefore, Plaintiff fails to make a prima facie showing of this Court's jurisdiction over Doreen Feeney and the motion to dismiss is GRANTED as to Doreen Feeney

**C. Plaintiff Fails to Make a Prima Facie Showing of Jurisdiction as to Doug Feeney**

Plaintiff has made no request for discovery into jurisdictional issues. Nor does Plaintiff contend that this Court has general jurisdiction over the Feeneys; he contends only that it has specific jurisdiction. Accepting Plaintiff's allegations as true, they do not amount to a prima facie showing of personal jurisdiction over Doug Feeney.

*1. Purposeful Availment*

In tort cases, purposeful availment is established where the defendant " '(1) committed an intentional act, (2) expressly aimed at the forum state (3) causing harm that the defendant knows is likely to be suffered in the forum state.' " *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206–07 (9th Cir.2006) (quoting *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 803 (9th Cir.2004)); *see also Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir.2002); *Core–Vent Corp. v. Nobel Indus.,* 11 F.3d 1482, 1486 (9th Cir.1993); *Ziegler,* 64 F.3d at 474.

In *Ziegler,* the plaintiff alleged that several defendants in Florida conspired to have him wrongfully arrested in California. *Ziegler,* 64 F.3d at 474. His arrest fol-

lowed a payment dispute with a Florida fruit seller, involving a check returned by the plaintiff's bank for insufficient funds. *Id.* at 472–73, 475. Although the check was good when plaintiff wrote it, the seller's executive vice president allegedly referred the matter to the county sheriff in order to have the plaintiff arrested in California for grand theft. *Id.* Accepting these allegations as true, the Ninth Circuit held that the purposeful availment test was satisfied as to the seller and its executive vice president. *Id.* The court reasoned that these defendants "took specific action to have Ziegler unlawfully arrested in California. The alleged wrongful conduct was plainly aimed at California. It was also intended to be felt by Ziegler in California. The harm—Ziegler's arrest—was anticipated to occur in California." *Id.* Thus, the court concluded these defendants had purposefully availed themselves of California law. *Id.*

In another context, the Ninth Circuit found that purposeful availment was satisfied where the defendant made allegedly defamatory comments during an unsolicited phone call. *Brainerd v. Governors of the Univ. of Alberta,* 873 F.2d 1257, 1259–60 (9th Cir.1989). In that case, the plaintiff had accepted a faculty position at the University of Arizona following his departure from the University of Alberta in Canada. *Id.* at 1258. This departure came after a dispute with university administrators, including the defendant, over the plaintiff's alleged misuse of university funds. *Id.* The plaintiff and the university entered a settlement agreement whereby

he agreed to resign and the university agreed to provide a reference. *Id.* However, upon hearing rumors about the plaintiff's departure from Alberta, a University of Arizona official called the defendant in Alberta to investigate. *Id.* During this telephone call, the defendant allegedly accused the plaintiff of misusing funds and also allegedly said that he would not hire the plaintiff. *Id.*

The court held that this telephone conversation supported personal jurisdiction over the defendant in Arizona, whose long-arm statute, like California's, is co-extensive with the Constitution. *Id.* at 1258–59. The court reasoned that "[the defendant's] communications were directed to Arizona, even though he did not initiate the contact." *Id.* at 1259. Moreover, "[a]ssuming the allegations in the complaint are true, [the defendant] knew the injury and harm stemming from his communications would occur in Arizona, where [the plaintiff] planned to live and work." *Id.*

The facts of this case are distinguishable from *Ziegler* because Plaintiff does not allege that Doug Feeney initiated any contact with California police or otherwise reached out to California. The question here is whether Feeney nevertheless purposefully availed himself of California law during the phone conversation Redondo Beach police initiated with him. Feeney acknowledges receiving such a phone call. (Doug Feeney Decl. ¶ 17.) Under Ninth Circuit precedent a defendant need not have initiated the contact at issue in order to have purposefully availed himself of the forum.[5] *See Brainerd,* 873 F.2d at 1259.

**5.** Defendants cite a Fifth Circuit decision that reached the opposite conclusion in a similar scenario. *See Wilson v. Belin,* 20 F.3d 644, 649 (5th Cir.1994) (finding that defendants' allegedly libelous statements during an unsolicited phone call did not establish purposeful availment, because defendants had taken "no planned action to inject themselves" into the forum). The First Circuit has also empha-

sized the distinction between one who initiates contact and one who merely responds. *See Ticketmaster—New York, Inc. v. Alioto,* 26 F.3d 201, 208–09 (1st Cir.1994) ("The person who responds to a journalist's question in the course of an interview initiated by the latter .... cannot fairly be equated with an individual who has achieved the same position through a series of personalized affirmative

It is thus possible to draw an analogy to *Brainerd* here, albeit a tenuous one: like the defendant in *Brainerd* who knew his comments would affect the plaintiff in Arizona, Feeney would presumably have known during his conversation with Redondo Beach police that Plaintiff was under investigation and that Feeney's statements would likely have an effect on Plaintiff there. This analogy, though, is imperfect at best. For example, Plaintiff has nowhere alleged that Feeney actually knew or was told at the time of the alleged call that Redondo Beach is located in California. It is not clear that an Arkansas resident unfamiliar with California would realize this geographic connection on his own. *See Terracom*, 49 F.3d at 560 (finding that, where the state of California was not mentioned in discussions or noted on the bank certificates at issue, the defendant would not have known that certain bank certificate codes indicated a connection to California).

In any event, this Court need not decide the purposeful availment issue definitively. Even assuming arguendo that Doug Feeney's conversation with Redondo Beach police amounted to purposeful availment, Plaintiff fails to make a prima facie showing that his cause of action arises out of such contact and that personal jurisdiction over Feeney would be reasonable. *See Core–Vent*, 11 F.3d at 1487 ("We need not decide [the purposeful availment] issue definitively, because we conclude . . . that the exercise of jurisdiction would be unreasonable in any event.").

*2. Arising Under Forum Related Activities*

■ The second prong of the specific jurisdiction test requires that, "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen. *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir.1995). Plaintiff alleges that he was incarcerated as a result of Doug Feeney's statements to Redondo Beach police. However, Plaintiff's own declaration undermines this assertion when it also alleges that American Express told Redondo Beach police he was a thief who pretends to purchase companies in order to use their credit. (Mitan Decl. ¶ 49.) Additionally, Feeney states that the Rendondo Beach police contacted him after Plaintiff had already been arrested.[6] (Doug Feeney Decl. ¶ 17.) Finally, according to Plaintiff's declaration it was the District Attorney who brought felony charges against him. (Mitan Decl. ¶ 47.) Plaintiff therefore has not shown that, *but for* Doug Feeney's alleged statements, Plaintiff would not have been arrested on the basis of other information. *See id.* (finding that the "but for" test was not satisfied where information furnished by defendant was only one part of an independent evaluation.)

*3. Reasonableness of Jurisdiction*

■ For jurisdiction to be reasonable, it must comport with 'fair play and substantial justice.' *Panavision Intern. L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (quoting *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174). Courts use a balancing test to evaluate reasonableness based

choices reaffirmed at every significant juncture.") The First Circuit "recognize[d] that a person speaking on the telephone is free to refrain from making defamatory comments in the same way that a person standing beside a telephone is free to refrain from calling a reporter" but found this to be "only the most

marginal of showings" of purposeful availment. *Id.* at 209 & n. 12.

**6.** Neither Plaintiff's complaint nor his declaration conflict with this statement by Doug Feeney.

on the following factors: (1) the extent of the defendant's purposeful interjection into the forum; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Ziegler*, 64 F.3d at 474–75.

### a. Purposeful Interjection

Even if there is sufficient interjection to satisfy the purposeful availment prong, the degree of interjection may still be so small as to weigh against the reasonableness of jurisdiction. *Core–Vent*, 11 F.3d at 1488. "[T]he smaller the element of purposeful interjection, the less jurisdiction is to be anticipated and the less reasonable its exercise." *Id.* (quoting *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir.1981)) (internal quotation marks omitted). If there was any purposeful interjection by Doug Feeney into California, it was minimal. He did not initiate contact with California; Plaintiff's allegations relate to statements Feeney allegedly made when Redondo Beach police called him on the phone in Arkansas. Thus, this factor weighs against jurisdiction.

### b. Burden on Defendant

Where the burden imposed on defendants by litigating in California would be equal to the burden facing the plaintiff by litigating elsewhere, this factor should weigh in favor of defendants. *Ziegler*, 64 F.3d at 475; *see also Terracom*, 49 F.3d at 561. Here, the burdens seem roughly equal. The Feeneys are residents of Arkansas and would have to travel to California; likewise, Plaintiff would have to travel to Arkansas if the litigation proceeded there. However, it is worth noting that Plaintiff has spent considerable time doing business in Arkansas and has litigated extensively in venues outside of California. *See* (Feeneys' Requests for Judicial Notice Exs. 1–44.) Thus, this factor weighs against jurisdiction.

### c. Conflict with Arkansas' Sovereignty

The Feeneys argue that the parties have already litigated their disputes in the Eastern District of Arkansas. (Feeneys' Mot. to Dismiss at 14.) They argue in addition that because their alleged acts took place in Arkansas, Arkansas has a greater interest in asserting jurisdiction. Moreover, the alleged false statement at the heart of Plaintiff's lawsuit concerns the ownership of Prime Line, an issue already litigated in the Eastern District of Arkansas and in the Eighth Circuit. *See* Feeneys' RJN Ex. B. Plaintiff argues that because Doug Feeney allegedly made false statements to Redondo Beach police that resulted in Plaintiff's incarceration there, California's sovereignty is more strongly implicated. Because Arkansas has already invested time and resources adjudicating issues in this case, this factor also weighs against jurisdiction in California.

### d. California's Interest in Jurisdiction

Plaintiff alleges he was arrested, charged with crimes, and incarcerated in California. Taking his allegations as true, California would have an interest in "protecting its citizens from the wrongful acts of nonresident defendants." *Ziegler*, 64 F.3d at 475.

### e. Efficiency

This factor looks at where witnesses and evidence are likely to be located. *Id.* (quoting *Core–Vent*, 11 F.3d at 1489.) The Feeneys argue that most relevant documents and witnesses (including the Feeneys themselves and employees of the American Express office) are located in Arkansas, where the alleged purchase of

Prime Line took place and was subsequently adjudicated. (Feeneys' Mot. to Dismiss at 14.) Plaintiff argues that he would likely need to call Redondo Beach police officers, Los Angeles County jail officials and representatives of the Los Angeles District Attorney's office as witnesses. (Pl.'s Resp. to Feeneys' Mot. to Dismiss at 11.) Neither party has given more detailed information on how many witnesses they would likely call from each location. Since there is likely to be some evidence and witnesses in both places, this factor does not weigh heavily either way. *See Terracom,* 49 F.3d at 561.

#### f. Importance of the Forum to Plaintiff's Interest in Convenient and Effective Relief

Inconvenience to the plaintiff is given little weight. *Ziegler,* 64 F.3d at 476. Nevertheless, Plaintiff argues that he would have difficulty calling California public officials in Arkansas and that an Arkansas jury is unlikely to understand his experience in a California jail facility. This argument is unpersuasive. "A mere preference on the part of the plaintiff for its home forum does not affect the balancing." *Core–Vent,* 11 F.3d at 1490.

#### g. Availability of an Alternative Forum

The plaintiff bears the burden of proving that an alternative forum is unavailable. *Id.* Plaintiff does not dispute that Arkansas exists as an alternative forum. (Pl.'s Resp. to Feeneys' Mot. to Dismiss at 12.) Therefore, this factor weighs against jurisdiction in California.

#### h. Balancing of the Factors

Factors (a), (b), (c), (f) and (g) weigh against jurisdiction. Factor (d) weighs in favor of Plaintiff. Factor (e) does not tilt heavily either way. Thus, the balance of factors suggests that exercising jurisdiction over the Feeneys would not comport with traditional notions of fair play and substantial justice and would be unreasonable. Therefore, Plaintiff fails to make a prima facie showing of jurisdiction over Doug Feeney.[7]

### D. The Request for Change of Venue is Moot

Because this Court lacks personal jurisdiction over the Feeneys, their motion in the alternative for change of venue is DENIED as moot.

## IV. MOTION TO DISMISS UNDER RULE 12(b)(6)

American Express moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. Legal Standard Governing a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claim stated in the complaint. *Ileto v. Glock Inc.,* 349 F.3d 1191, 1199–1200 (9th Cir.2003). "To survive a motion to dismiss ... under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2). Rule 8(a)(2) requires only that the complaint include 'a

---

7. Additionally, under Local Rule 7–12, this Court may treat the failure of a party to file any required paper within the deadline as consent to the granting or denial of the motion. L.R. 7–12. Plaintiff was properly served with the Feeneys' Motion to Dismiss by mail on May 15, 2007. (*See* American Express' Mot. to Dismiss.) Under Local Rule 7–9, an opposing party's papers are due 14 days before the date designated for the hearing of the motion to dismiss. L.R. 7–9. The hearing on this motion was scheduled for June 18, 2007; thus, Plaintiff's opposition was due June 4, 2007. Plaintiff filed no response until June 14, 2007. Therefore, the Plaintiff may be deemed to have consented to the granting of the motion.

short and plain statement of the claim showing that the pleader is entitled to relief.'" *Porter v. Jones,* 319 F.3d 483, 494 (9th Cir.2003) (quoting Fed.R.Civ.P. 8(a)(2)).

In *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the Supreme Court held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." For fifty years, this legal standard remained unchanged.

■ However, the Supreme Court has recently abrogated *Conley*'s rule. In referring to Conley's "no set of facts" language, the Court determined that it "has earned retirement" and that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard," *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, ——, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). The *Twombly* Court did not seemingly evince an intent to overrule Rule 8(a)'s limited notice pleading requirements. *Id.* at 1964 ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."). Yet, the Court now requires a plaintiff to proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Consequently, a Rule 12(b)(6) motion should be granted where the plaintiffs have failed to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Twombly,* 127 S.Ct. at 1964–65 (citation omitted).

Thus, in evaluating a complaint, only its legal sufficiency may be considered, not the weight of the evidence supporting it. Furthermore, a court "must accept as true all factual allegations in the complaint." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994), *overruled on other grounds, Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir.2002). A court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295–96 (9th Cir.1998).

*B. Plaintiff Fails to State Claims for Intentional or Negligent Infliction of Emotional Distress Against American Express*

As an initial matter, American Express contends that any tort claim is barred by virtue of a contractual relationship between Plaintiff as cardholder and American Express as lender. (American Express' Mot. to Dismiss at 4.) However, this argument misconstrues the allegations in the complaint, which are not based solely on a breach of contract. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 515, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994). For the reasons discussed below, Plaintiff nevertheless fails to state a claim in tort.

*1. Intentional Infliction of Emotional Distress Claim*

■ A federal court sitting in diversity must apply the substantive common law of

the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under California law, a cause of action for intentional infliction of emotional distress requires proof of the following elements: (1) extreme and outrageous conduct by the defendant; (2) with the intention of causing, or reckless disregard for the probability of causing, emotional distress; (3) the plaintiff suffers severe or extreme emotional distress; and (4) defendant's outrageous conduct actually and proximately caused the emotional distress. *Wilkins v. Nat'l Broad. Co.*, 71 Cal.App.4th 1066, 1087, 84 Cal.Rptr.2d 329 (Ct.App.1999). American Express argues that Plaintiff has not alleged facts that, if true, would establish these elements. (American Express' Mot. to Dismiss at 6.)

### a. Extreme and Outrageous Conduct

■ The outrageous conduct element refers to conduct "so extreme and outrageous 'as to exceed all bounds of that usually tolerated in a civilized society.'" *Id.* (quoting *Trerice v. Blue Cross of California*, 209 Cal.App.3d 878, 883, 257 Cal. Rptr. 338 (1989)). "[I]nsults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not constitute outrageous conduct. *Delfino v. Agilent Techs.*, 145 Cal.App.4th 790, 809, 52 Cal.Rptr.3d 376 (2006) (quoting *Molko v. Holy Spirit Ass'n*, 46 Cal.3d 1092, 1122, 252 Cal.Rptr. 122, 762 P.2d 46 (1988)). On the other hand, repeated and graphic threats of physical harm have been found sufficient to constitute outrageous conduct. *Delfino*, 145 Cal.App.4th at 809, 52 Cal.Rptr.3d 376. False and malicious accusations can also constitute outrageous conduct. *See, e.g., Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal.App.3d 376, 401, 89 Cal.Rptr. 78 (finding outrageous conduct where defendant insurer, in a ploy to avoid paying plaintiff's claims, sent plaintiff "false and threatening communications" that accused him of insurance application fraud); *Marsh v. San Diego County*, 432 F.Supp.2d 1035, 1055 (S.D.Cal. May 5, 2006) (denying 12(b)(6) motion where plaintiff alleged defendants had intentionally accused him of child abuse to hide their own wrongdoing, causing plaintiff to be unlawfully seized and deprived of his liberty for 21 years).

Plaintiff's complaint alleges that American Express engaged in "threats of intimidation and force, accusation of fraud, embezzlement, unfounded reports to authorities, confiscation of Plaintiff's personal property [and] medicine and cancellation of Plaintiff's credit." (Compl.¶ 14.) However, these allegations are too vague to satisfy the notice pleading standard of Rule 8(a)(2). *See Twombly*, 127 S.Ct. at 1966. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," neither is a court required to "conjure up unpleaded facts that might turn a frivolous claim ... into a substantial one." *Id.* at 1965, 1969 (quoting *O'Brien v. Di Grazia*, 544 F.2d 543, 546 (1st Cir.1976)). A sufficient complaint must "nudge[ ][its] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974. Plaintiff's allegations are too vague to do so.

One court recently confronted a similar problem of vagueness. In that case, the complaint alleged that the defendant attempted to force plaintiff to consent to a medical procedure that was not disclosed to her. *Thomas v. Hickman*, 2007 WL 470611, at *19 (E.D.Cal. Feb. 9, 2007). The court, however, found this allegation too vague to sufficiently allege extreme and outrageous conduct. *Id.* The court reasoned that a term as vague as "force" did not give sufficient notice as to the claim's basis, because the complaint was silent on how the defendant had attempted to force the procedure. *Id.*

Similarly, here Plaintiff has merely alleged "threats of intimidation and force"—a phrase too vague to give any meaningful notice of the claim's actual basis. In alleging that American Express accused him of fraud and embezzlement and made unfounded reports to authorities, the complaint is equally hazy. American Express, a company that serves millions of customers and likely deals with thousands of suspicious transactions a year, cannot meaningfully defend against such bare assertions. *See Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."). Nor do conclusory allegations that Plaintiff's personal property was confiscated and his credit cancelled suggest, on their own, conduct by American Express exceeding the bounds tolerated by civilized society. Because Plaintiff has not alleged facts sufficient to satisfy this element, he fails to state a claim for IIED.[8]

*b. Intent to Cause Emotional Distress*

In order to establish the second element, a plaintiff must show the conduct was especially calculated to cause severe mental distress. *Coon v. Joseph,* 192 Cal.App.3d 1269, 1273, 237 Cal.Rptr. 873 (1987) (citing *Ochoa v. Superior Court,* 39 Cal.3d 159, 166 n. 5, 216 Cal.Rptr. 661, 703 P.2d 1 (1985)).

In his complaint, Plaintiff merely recites the element of intent itself using conclusory, boilerplate language. The complaint avers that the "outrageous conduct . . . was made and intended by the Defendants . . . to cause Plaintiff extreme emotional distress." (Compl.¶ 15.) Plaintiff also alleges that "it was the intentions [sic] of the Defendants to cause Plaintiff to lose his entire investment in Prime Line, Inc." (Compl.¶ 16.) Finally, Plaintiff alleges that Defendants' conduct was "willful, wanton and intentional and designed to permanently injure the Plaintiff." (Compl.¶ 18.) As to intent, Plaintiff has not alleged any facts at all. These paragraphs merely assert a legal conclusion, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1965.

*c. Causation*

 Plaintiff's allegation of causation is also conclusory rather than factual, and this Court need not accept mere "labels and conclusions." *Twombly,* 127 S.Ct. at 1965. Nowhere in the complaint does Plaintiff allege any facts to suggest how Defendant's alleged conduct caused his distress; he merely alleges the conclusion of causation itself.

Because Plaintiff has failed to allege sufficient facts to establish any of the first three elements, Plaintiff's complaint fails to state a claim for intentional infliction of emotional distress.

*2. Negligent Infliction of Emotional Distress Claim*

 A cause of action for NIED requires that a plaintiff show "(1) serious emotional distress, (2) actually and proxi-

---

8. In his belated response, Plaintiff argues that American Express acted to have Plaintiff wrongfully arrested on charges stemming from his application for a credit card in Prime Line's name. (Pl.'s Resp. to American Express' Mot. to Dismiss at 6, 8, 10–11.) This appears to be the real crux of his argument. However, his complaint makes no mention of his alleged incarceration and does not allege facts to suggest that American Express acted deliberately cause it. To the extent that his IIED claim depends on his alleged incarceration, Plaintiff should have included it in the complaint. As it is, his complaint does not give fair notice of what is apparently the key basis for his complaint. Therefore, the Court does not consider it on this motion to dismiss. *See Lee,* 250 F.3d at 688.

mately caused by (3) wrongful conduct (4) by a defendant who should have foreseen that the conduct would cause such distress." *Austin v. Terhune,* 367 F.3d 1167, 1172 (9th Cir.2004).

■■■ Plaintiff relies here on exactly the same allegations made in the IIED claim. As discussed in that context, alleging the legal conclusion of causation is insufficient to state a claim for relief. Plaintiff merely alleges that he suffered emotional distress and economic loss "[a]s a proximate result of the conduct of the Defendants." (Compl.¶¶ 16, 17.) This Court cannot accept a legal conclusion cast in the form of a factual allegation. *Clegg,* 18 F.3d at 754–55. Therefore, Plaintiff's complaint fails to state a claim for negligent infliction of emotional distress.[9]

### C. Leave to Amend

■■■ American Express argues that any amendment would be futile given that California protects statements made by citizens to law enforcement personnel under an absolute privilege.[10] *See Hagberg v. Cal. Fed. Bank,* 32 Cal.4th 39, 32 Cal.4th 350, 364, 7 Cal.Rptr.3d 803, 81 P.3d 244 (2004) ("[T]he overwhelming majority of cases conclude that when a citizen contacts law enforcement personnel to report suspected criminal activity and to instigate law enforcement personnel to respond, the communication also enjoys an unqualified privilege .... We find these decisions to be persuasive ...."); *see also Silberg v. Anderson,* 50 Cal.3d 205, 215–16, 266 Cal.

Rptr. 638, 786 P.2d 365. (1990). This absolute privilege applies in all tort claims except malicious prosecution. *Hagberg,* 32 Cal.4th 39, 32 Cal.4th at 375, 7 Cal.Rptr.3d 803, 81 P.3d 244; *Silberg,* 50 Cal.3d at 216, 266 Cal.Rptr. 638, 786 P.2d 365. Thus, American Express argues that any alleged statements by American Express to Redondo Beach police cannot possibly form the basis of an IIED or NIED claim. (American Express' Reply at 3.)However, Plaintiff indicates in his opposition that he intends to amend his complaint to allege malicious prosecution. (Pl.'s Resp. to American Express' Mot. to Dismiss at 4.) It thus seems at least possible that Plaintiff could amend his complaint to state a claim. Therefore, the Court grants leave to amend. *See Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) ("[I]n dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'") (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995)).

For the foregoing reasons, the Court GRANTS the Feeneys' Motion to Dismiss under 12(b)(2), DENIES as moot the Request for Change of Venue, GRANTS American Express' Motion to Dismiss under 12(b)(6) without prejudice, and DENIES as moot American Express' Motion to Strike. The Court GRANTS Plaintiff three weeks from the issuance of this or-

---

**9.** Additionally, under Local Rule 7–12, this Court may treat the failure of a party to file any required paper within the deadline as consent to the granting or denial of the motion. L.R. 7–12. Plaintiff was properly served with the Feeneys' Motion to Dismiss by mail on May 15, 2007. (*See* American Express' Mot. to Dismiss.) Under Local Rule 7–9, an opposing party's papers are due 14 days before the date designated for the hearing of the motion to dismiss. L.R. 7–9. The hear-

ing on this motion was scheduled for June 18, 2007; thus, Plaintiff's opposition was due June 4, 2007. Plaintiff filed no response until June 14, 2007. Therefore, the Plaintiff may be deemed to have consented to the granting of the motion.

**10.** In cases brought solely under this Court's diversity jurisdiction, the state's privilege law applies. *See* Fed.R.Evid. 501.

der to file an amended complaint against Defendant American Express.

IT IS SO ORDERED.